**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lori Eichenberger,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>Falcon Air Express Incorporated,<br><br>　　　　　　　　Defendant. | No. CV-14-00168-PHX-DGC<br><br>**ORDER** |

Defendant Falcon Air Express, Inc. has filed a motion to dismiss. Doc. 8. The motion is fully briefed and neither party has requested oral argument. The Court will grant the motion in part and deny it in part.

**I.     Background.**

Plaintiff Lori Eichenberger alleges that she began working for Defendant on January 26, 2011 as a Flight Attendant based out of Mesa, Arizona. Doc. 1, ¶ 7. Cindy Nicholson was responsible for managing and supervising all flight attendants. *Id*., ¶ 11. Nicholson reported directly to Director of Operations Greg Vanek. *Id*., 12.

When she was hired in January 2011, Plaintiff's hourly wage was $21.85. *Id*., ¶ 14. In March 2011, Plaintiff was offered a Temporary Base Coordinator position that would require her to work from Atlantic City, New Jersey. *Id*., 15. Nicholson told Plaintiff that she would receive a pay increase to $26.35 per hour (Senior Pay) and an extra $500 per month, and would continue to receive Senior Pay after she returned to her regular position. *Id*.

1    Plaintiff alleges that during her time as Temporary Base Coordinator she spent approximately ten hours per month shuttling Defendant's employees for which she was never paid. *Id.*, ¶ 16. In addition, Plaintiff alleges she did not receive Senior Pay for all of the hours she worked and did not receive the additional $500 per month. *Id.*, ¶ 17.

In April 2011, Vanek allegedly took an interest in Plaintiff and began to harass her with inappropriate comments and sexual advances in person, over the phone, and via text message, such as "Oh my god you are so sexy" and "I want you." *Id.*, ¶¶ 24-25, 28. Plaintiff alleges that he would appear at times when Plaintiff was likely to be working alone, and on at least five to ten occasions during the last six to nine months of Plaintiff's employment he would purposefully bump into Plaintiff, wrap his arms around her, and ask her to give him a kiss. *Id.*, ¶ 27. Plaintiff claims that Vanek offered to fly Plaintiff to Miami so they could spend time together; he also offered to take her on vacation with him. *Id*, ¶¶ 29-30. Plaintiff flatly rebuffed all of Vanek's advances. *Id.*, ¶ 31. In November 2011, Plaintiff learned that Vanek had told other employees that he wanted to have sex with her. *Id.*, ¶ 33.

In November 2011, Plaintiff explained to Vanek that she was one of the more experienced flight attendants and that she wished to be scheduled to fly as a senior flight attendant. *Id.*, 34. Vanek responded that if Plaintiff would have dinner with him, he would see what he could do. *Id.* On another occasion, Plaintiff mentioned to Vanek that she would be interested in a supervisory flight attendant position. Vanek responded: "Why would I give that to you, when you do not give me anything." *Id.*, ¶ 35.

In December 2011, Plaintiff requested a leave of absence for medical reasons and was informed that she would need to submit paperwork from her medical provider to cover her medical leave and release to return to work. *Id.*, ¶ 36. Plaintiff claims that she made multiple attempts to send the paperwork to Defendant's HR department. Nicholson advised Plaintiff on January 28, 2012, however, that Defendant had not received the paperwork and that Plaintiff should contact HR Director Gus Fuerte. *Id.*, ¶ 39. Plaintiff contacted Fuerte and the paperwork was discovered by the HR department. *Id.*, ¶ 40.

On February 1, 2012, Plaintiff sent Nicholson a text message stating that she felt she had been treated unfairly as a result of her rejection of Vanek's sexual advances. *Id.*, ¶ 41. She forwarded Nicholson several examples of Vanek's inappropriate text messages. *Id*. In the same text message, Plaintiff notified Nicholson of the shortfalls in payment dating back to her time as Temporary Base Coordinator. *Id*. Plaintiff contacted Fuerte and made the same complaint. *Id.*, ¶ 42. Fuerte told Plaintiff that he would look into the matter and get back to her. *Id*. No one ever discussed Plaintiff's complaints with her after she reported them to Fuerte. *Id.*, ¶ 47.

In February 2012, Plaintiff was ill and unable to work for about a week. *Id.*, ¶ 43. In early March 2012, Plaintiff was in a car accident and was unable to work for a few days. *Id.*, ¶ 44. On March 12, 2012, less than six weeks after Plaintiff had complained to Nicholson and Fuerte about Vanek, Nicholson notified Plaintiff that she was being terminated for taking too much time off. *Id.*, ¶ 45.

Plaintiff instituted this action on January 29, 2014 asserting nine claims, including workplace discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), sex discrimination in violation of Title VII, retaliation in violation of Title VII, interference in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA"), retaliation in violation of the FMLA, intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), unpaid wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), and unpaid wages in violation of the Arizona Wage Act, A.R.S. § 23-355 ("AWA").

**II.   Legal Standard.**

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a

motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.   Analysis.

####    A.   Intentional Infliction of Emotional Distress.

To state a claim for IIED, a plaintiff must allege (1) conduct by the defendant that could be characterized as "extreme or outrageous," (2) that defendant intended to cause or recklessly disregarded the near certainty that emotional distress would result from its conduct; and (3) that defendant's conduct actually caused severe emotional distress. *Nelson v. Phoenix Resort Corp.*, 888 P.2d 1375, 1386 (Ariz. Ct. App. 1994) (citation omitted). For conduct to be characterized as "extreme or outrageous," it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Cluff v. Farmers Ins. Ex.*, 460 P.2d 666, 668 (Ariz. Ct. App. 1969) (quoting Restatement (Second) of Torts § 46 (1965)), *overruled on other grounds by Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 786-87 (Ariz. 1989). "It is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Spratt v. N. Auto. Corp.*, 958 F. Supp. 456, 461 (D. Ariz. 1996) (internal quotation marks and citation omitted).

Defendant argues that Plaintiff has failed to plead facts supporting a conclusion that its conduct was "extreme or outrageous." Doc. 8 at 3-5. Relying on *Loos v. Lowe's*

- 4 -

1  *HIW, Incorporated*, 796 F. Supp. 2d 1013, 1021-25 (D. Ariz. 2011), Plaintiff rejoins that
2  Defendant's failure to investigate and respond to her allegations of sexual harassment by
3  a high-level manager constitutes outrageous conduct. Doc. 12 at 2-3. She also urges the
4  Court to deny Defendant's motion because discovery could yield additional information
5  about Defendant's knowledge of Vanek's inappropriate conduct towards Plaintiff, which
6  would aid a trier of fact in concluding that Defendant's conduct was outrageous. *Id*., at 3.

Defendant's conduct, as pled by Plaintiff, does not approach conduct that can be characterized as "extreme or outrageous." *See Mintz. v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) (finding that employer's conduct in refusing to promote the plaintiff because of her gender, forcing her to return prematurely from a leave of absence, and hand-delivering a letter to her in the hospital stating that her job duties had been reassigned, did not rise to the level of extreme and outrageous conduct); *Nelson*, 888 P.2d at 1386 (finding that employer's conduct in terminating plaintiff in the middle of the night in front of co-workers, prohibiting plaintiff from clearing personal effects from desk, having plaintiff escorted off premises by armed security guards, and allowing plaintiff to use bathroom on the way out only if accompanied into the stall by the security guards, did not rise to the level of extreme and outrageous conduct); *Spratt*, 958 F. Supp. at 461 (finding that employer's conduct in placing female in performance improvement plan while on maternity leave, coercing her to take a demotion, discriminating against her on the basis of sex, suspending her based on trumped up allegations of employee theft, and terminating her on the basis of the false allegations of theft, did not rise to the level of extreme and outrageous conduct). Plaintiff's reliance on *Loos* is misplaced, particularly since *Loos* dismissed the plaintiff's IIED claim on closely analogous facts. 796 F. Supp. at 1021-25. Plaintiff's IIED claim fails as a matter of law and must be dismissed.

### B.   Negligent Infliction of Emotional Distress.

Under Arizona law, a plaintiff has a cognizable NIED claim against another if (1) the tortfeasor should have realized that his conduct involved an unreasonable risk of

causing distress, and (2) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm. Restatement (Second) of Torts § 313 (adopted by *Ball v. Prentice*, 781 P.2d 628, 630 (Ariz. Ct. App. 1989)). Arizona courts recognize a claim for NIED when someone witnesses an injury to a closely related person. *Keck v. Jackson*, 593 P.2d 668, 669 (Ariz. 1979) (en banc). Plaintiff obviously cannot recover under a bystander theory of NIED because she has not alleged she witnessed an injury to someone else. Because the Restatement puts no limitations on the availability of the tort, however, Federal courts have applied the NIED cause of action to encompass employment cases. *See, e.g., Loos*, 796 F. Supp. 2d at 1020; *Carboun v. City of Chandler*, No. CV032156-PHX-DGC, 2005 WL 2408294, at *12 (D. Ariz. Sept. 27, 2005). Under Arizona cases, however, there is no recovery for this tort unless it is sufficiently severe that "physical harm develops as a result of plaintiff's emotional distress." *DeStories v. City of Phoenix*, 744 P.2d 705, 709 (Ariz. Ct. App. 1987).

### 1. Unreasonable Risk of Bodily Harm.

Relying on Revised Arizona Jury Instruction (Civil) (5th ed. 2013), Negligence 9, Defendant argues that Plaintiff has not pled sufficient facts to show that its conduct "created an unreasonable risk of bodily harm" to her. Doc. 8 at 6. The Court disagrees. *Monaco v. Healthpartners of S. Arizona*, 995 P.2d 735 (Ariz. Ct. App. 1999), makes clear that "long-term physical illness or mental disturbance" satisfy the NIED bodily harm requirement. *Id*. at 738-39. In *Monaco*, the plaintiff suffered prolonged sleeplessness, nightmares, and anxiety, which the court found sufficient to support his NIED claim. *Id*. at 739. Plaintiff's complaint alleges that she has suffered emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life as a result of Defendant's conduct. Doc. 1, ¶ 105. These alleged symptoms are sufficient for her NIED claim to survive a motion to dismiss.

### 2. Worker's Compensation.

Defendant argues that Plaintiff's NIED claim fails as a matter of law because the

Arizona workers' compensation system provides the exclusive remedy for her alleged injuries. Doc. 8 at 5. Plaintiff ignored this argument in her response. *See* Doc. 12 at 4-5. For the reasons below, the Court agrees with Defendant.

The workers' compensation statute provides the exclusive remedy for injuries sustained by an employee against the employer or a co-employee acting within the scope of his or her employment. A.R.S. § 23-1022(A); *Gamez v. Brush Wellman, Inc.*, 34 P.3d 375, 378 (Ariz. Ct. App. 2001) ("It is well settled that work-related injury claims are generally redressed exclusively under Arizona's workers' compensation scheme."). Injuries caused by an employer's negligence fall under this exclusive remedies provision. *See Irvin Investors, Inc. v. Superior Ct.*, 800 P.2d 979, 981-82 (Ariz. Ct. App. 1990) (holding that the plaintiff's negligence claims against her former employer were barred by Arizona's workers' compensation law, "which provides the exclusive remedy for workers injured on the job").

Because Plaintiff's claim of NIED alleges that she was injured as a result of Defendant's negligent workplace conduct, the claim is barred by Arizona's workers' compensation scheme, unless an exception to the workers' compensation scheme applies. There is a willful misconduct exception in A.R.S. § 23-1022(A), but this exception applies when the employee's injury is caused by the employer's "willful misconduct," which is defined as "an act knowingly and purposely with the direct object of injuring another." A.R.S. §§ 23-1022(A) & 23-1022(B). Plaintiff has not argued that this exception applies, and it would not logically apply to a claim based on negligence. The Court concludes that Plaintiff's NIED claim fails as a matter of law.

**C.     Unpaid Wages under the FLSA.**

Defendant argues that Plaintiff's FLSA claim is barred by a two-year statute of limitations. Doc. 8 at 7. Plaintiff argues that her claim is not time-barred and is subject to a three-year limitation because Defendant's conduct was willful. Doc. 12 at 5.

Civil actions to enforce the FLSA must be commenced within two years, "except that a cause of action arising out of a willful violation may be commenced within three

years after the cause of action accrued." 29 U.S.C. § 255(a). An FLSA violation is "willful" only if the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *McLaughlin v. Richard Shoe Co.*, 486 U.S. 128, 133 (1988).

Plaintiff's complaint alleges that she was not paid for work performed while working as a Temporary Base Coordinator between January and December 2011. Because Plaintiff filed her complaint on January 29, 2014, her claim would not be barred if the three-year limitations period applied. She argues that the following facts show that Defendant wilfully refused to pay her wages: Plaintiff complained to Nicholson and other managers regarding Defendant's failure to provide her with promised compensation and the discrepancy in hours she worked versus the hours for which she was paid; upon information and belief, other flight attendants made similar complaints. Doc. 12 at 6. The Court concludes that these factual allegations, if proven, could establish that Defendant willfully violated the FLSA. Plaintiff has alleged that she put Defendant on notice of her claim to additional wages and Defendant failed to respond. It is enough, at this stage, that Plaintiff has pled that she spoke to Defendant's representatives about the failure to pay her promised wages. *See, e.g.*, *Uriarte v. City of Calexico*, Civil No.10cv498 L(WMc), 2011 WL 2015215, at *2 (S.D. Cal. May 23, 2011) (willfulness sufficiently pled based on allegations of notice to the employer); *Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276, 294 (E.D.N.Y. 2007). The Court therefore cannot conclude that Plaintiff's FLSA claim is barred by the two-year limitations period.

### D.    Unpaid Wages under the AWA.

Defendant argues that Plaintiff's AWA claim is barred by a one-year statute of limitations. Doc. 8 at 9. The Court agrees.

Claims for unpaid wages brought pursuant to the AWA are subject to the one-year limitations period established in A.R.S. § 12-541(5). *Redhair v. Kinerk, Beal, Schmidt, Dyer & Sethi, P.C.*, 183 P.3d 544, 550 (Ariz. Ct. App. 2008). Plaintiff asserts that, pursuant to A.R.S. § 23-364(H), a civil action alleging a willful failure to pay minimum

wages may be commenced three years after accrual of the action.  Doc. 12 at 7.  But § 23-364(H) applies to actions arising under the Arizona Minimum Wage Act, A.R.S. 23-363, *et seq.*, a separate statutory scheme from that relied on in Plaintiff's complaint.  Because Plaintiff's complaint alleges that she was not paid for work performed while working as a Temporary Base Coordinator between January and December 2011, her AWA claim for unpaid wages is time-barred and must be dismissed.

**IT IS ORDERED** that Defendant's motion to dismiss (Doc. 8) is **granted in part** and **denied in part**.  Plaintiff's sixth, seventh, and ninth causes of action are dismissed.

Dated this 4th day of August, 2014.

_____
David G. Campbell
United States District Judge