**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lori Eichenberger,<br><br>              Plaintiff,<br><br>v.<br><br>Falcon Air Express Incorporated,<br><br>              Defendant. | No. CV-14-00168-PHX-DGC<br><br>**ORDER AND DEFAULT JUDGMENT** |

The Court previously decided to enter default judgment against Defendant Falcon Air and denied Defendant's motion to set aside the default. Docs. 32, 48. Plaintiff Lori Eichenberger has filed a proposed form of judgment, Defendant has responded, and Eichenberger has replied. Docs. 35, 41, 50. No party has requested oral argument. The Court will now enter default judgment.

**I.  Background.**

Lori Eichenberger began working for Falcon Air in January of 2011. Doc. 1, ¶ 7. She was initially hired as a flight attendant with a wage of $21.85 an hour. *Id.*, ¶¶ 7, 14. Falcon Air promptly promoted her to a "temporary base coordinator" position that paid her $26.35 an hour with an extra $500 per month. *Id.*, ¶ 15. Eichenberger logged long hours, working an average of sixty to seventy hours per week. *Id.*, ¶ 18. From February to December 2011, however, Falcon Air did not pay her for all the hours she worked and did not pay her the extra $500 per month as promised. *Id.*, ¶¶ 17-19.

Gregory Vanek, a director of operations at Falcon Air, began to sexually harass Eichenberger in March of 2011. *Id.*, ¶¶ 23-24. For example, he would say to Eichenberger "Oh my god you are so sexy" and "I want you." *Id.*, ¶¶ 24-25, 28. He would bump into Eichenberger, wrap his arms around her, and ask her to give him a kiss. *Id.*, ¶ 27. He would offer to take Eichenberger on trips and vacations. *Id.*, ¶¶ 29-30. He would tell other employees at Falcon Air that he wanted to have sex with Eichenberger. *Id.*, ¶ 33. When Eichenberger asked Vanek for help at work, Vanek would make comments such as "Why would I give that to you, when you do not give me anything?" *Id.*, ¶ 35. This occurred from March to December of 2011, and Eichenberger consistently rejected Vanek's advances. *Id.*, ¶ 31.

Eichenberger began to suffer problems with her health. In December of 2011, she requested a leave of absence. *Id.*, ¶¶ 36-37. Falcon Air claimed that it had not received the relevant paperwork, even though both Eichenberger and her medical provider had sent the documents to Falcon Air. *Id.*, ¶¶ 37-39. Eichenberger eventually resolved the missing-paperwork issue with the help of Gus Fuerte, a human resources director at Falcon Air. *Id.*, ¶¶ 39-40. Eichenberger complained to Fuerte that the misplacement of the medical paperwork, as well as the lost work time she suffered as a result, seemed to be happening because she had rejected Vanek's sexual advances. *Id.*, ¶ 42.

Eichenberger also complained about Vanek's harassment to Cindy Nicholson, a manager at Falcon Air. *Id.*, ¶ 41. She forwarded to Nicholson inappropriate text messages that she had received from Vanek. *Id.* Eichenberger believes that neither Fuerte nor Nicholson investigated her complaints. *Id.*, ¶¶ 47-48. In February and March of 2012, Eichenberger had to take several days off for health reasons. *Id.*, ¶¶ 43-44. She was suffering from a bronchial infection, strep throat, and injuries from a car accident. *Id.*, ¶¶ 43-44. On March 12, 2012, Nicholson e-mailed Eichenberger that she was being fired for being absent from work. *Id.*, ¶ 45.

Eichenberger believes that she was fired for having rejected Vanek's sexual advances. *Id.*, ¶ 46. After receiving a notice of right to sue from the EEOC, she filed this

suit. The Court partially granted a motion to dismiss, leaving Eichenberger with six claims against Falcon Air: three under Title VII, two under the Family and Medical Leave Act ("FMLA"), and one under the Fair Labor Standards Act ("FLSA").

**II.     Default Judgment Factors.**

In deciding whether to grant default judgment, the Court may consider: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claim, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of a dispute concerning material facts, (6) whether default was due to excusable neglect, and (7) the policy favoring a decision on the merits. *Eitel v.McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In applying the *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).

**A.     Possible Prejudice to Plaintiff.**

The first *Eitel* factor weighs in favor of entering default judgment. Falcon Air prejudiced Eichenberger by failing to produce documents, delaying the case, and failing to appear at a hearing and case-management conference.

**B.     The Merits of Plaintiff's Claims and the Sufficiency of the Complaint.**

The second and third *Eitel* factors favor a default judgment where the complaint sufficiently states a claim for relief. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). For this factor, the Court must "'consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (quoting Wright, Miller, et al., 10A Federal Practice and Procedure § 2688 (3d ed. 1998)). The Court will examine whether Eichenberger has adequately pled her six claims.

**1.     Title VII Sexual Harassment Claim.**

A plaintiff may establish a sex-discrimination claim under Title VII by proving that sexual harassment created a hostile work environment. *See Meritor Sav. Bank v.*

*Vinson*, 477 U.S. 57, 66 (1986); 42 U.S.C. § 2000e-2(a)(1). To establish this claim, a plaintiff must show that (1) she was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *See Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1065 (9th Cir. 2002) (citing *Ellison v. Brady*, 924 F.2d 872, 875-76 (9th Cir. 1991)). The work environment "must be both objectively and subjectively offensive, one that a reasonable [woman] would find hostile or abusive, and one that the [plaintiff] in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)). An employer's vicarious liability for sexual harassment "depends on the status of the harasser." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013). If the harasser is a supervisor and the "harassment culminates in a tangible employment action, the employer is strictly liable." *Id.*

According to Plaintiff's complaint, Greg Vanek harassed her on several occasions. He made inappropriate comments such as "my god you are so sexy," he embraced and kissed her, and he responded to her requests with comments such as "[w]hy would I give that to you, when you do not give me anything." Doc. 1, ¶¶ 24-35. This conduct was unwelcome, as shown by Eichenberger's repeated rejections of Vanek's advances. *Id.*, ¶ 31. A reasonable woman would find Vanek's conduct to be hostile and abusive.

"[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Ellison*, 924 F.2d at 878. Vanek's conduct continued for nine months. Because Vanek was a supervisor and Eichenberger alleges that his harassment resulted in her firing, Falcon Air is vicariously liable. Eichenberger has stated a claim of sexual harassment under Title VII.

**2.     Title VII Sex Discrimination Claim.**

Eichenberger claims that Falcon Air violated Title VII when it fired her on account of her sex. This claim presumably relies on the same statutory provision as does

- 4 -

her sexual harassment claim.  *See* 42 U.S.C. § 2000e-2(a).  Because the Court has already determined that Eichenberger is entitled to relief under this provision, it is not necessary to address her additional claim.

### 3. Title VII Retaliation Claim.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in a protected activity under Title VII, (2) an adverse employment action was then taken against her, and (3) a causal link existed between the two events. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004); *see* 42 U.S.C. § 2000e-3(a).  An employee engages in a "protected activity" when the employee complains about or protests conduct that the employee reasonably believes constitutes an unlawful employment practice.  *See Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994).  An employment action is materially adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation marks and citations omitted).  "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013).

Eichenberger has stated a claim for retaliation under Title VII.  She engaged in protected activity when she complained of Vanek's sexual harassment to Gus Fuerte, a human resources director, and Cindy Nicholson, a manager.  Doc. 1, ¶¶ 41-42.  She alleges that an adverse employment action was then taken against her when she was fired. *Id.*, ¶ 45.  Finally, she alleges that but for her complaints she would not have been fired. *Id.*, ¶ 71.  These are sufficient allegations to state a Title VII claim.

### 4. FMLA Interference Claim.

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1).  To establish an interference claim, the employee must show that (1) she was eligible for the FMLA's protections, (2) her employer was covered by the

FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled. *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011). "[A]n employee may prevail on a claim that an employer interfered with her rights by terminating her in violation of FMLA by showing . . . that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1135-36 (9th Cir. 2003) (quotation marks and citation omitted).

Eichenberger has stated a claim of interference with her rights under the FMLA. Having worked at least 504 hours in the twelve months leading up to February 2012, she was eligible for FMLA leave. Doc. 1, ¶ 78; *see* 29 U.S.C. § 2611(2)(D) (defining FMLA eligibility for flight attendants and crewmembers). Falcon Air was an employer covered by the FMLA. 29 U.S.C. § 2611(4)(A). Eichenberger was entitled to FMLA leave due to her bronchial infection, strep throat, and injuries following a car accident, all of which may qualify as "serious health conditions." 29 U.S.C. § 2612(a)(1)(D); *see also Marchisheck v. San Mateo Cnty.*, 199 F.3d 1068, 1074-76 (9th Cir. 1999) (discussing what constitutes a serious health condition). She gave sufficient notice of her intent to take leave when she requested a leave of absence and submitted paperwork from her medical provider. Doc. 1, ¶¶ 36-37, 43-44. Finally, Falcon Air denied her benefits by firing her for using medical leave to which she was entitled under the FMLA.[1]

### 5. FMLA Retaliation Claim.

The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 25 U.S.C. § 2615(a)(2). The key to an FMLA retaliation claim – which is easily confused with an interference claim – is that the employer punishes an employee "for *opposing* unlawful practices by the employer." *Xin Liu*, 347 F.3d at 1136 (emphasis

---

[1] Defendant has submitted an affidavit that Eichenberger did not give Falcon Air sufficient notice of her need to take medical leave. Doc. 40-2. But because Defendant has defaulted, "the factual allegations of the complaint . . . are deemed to have been admitted by the non-responding party." *Landstar Ranger, Inc.*, 725 F. Supp. 2d at 920.

- 6 -

in original); *see also Gressett v. Cent. Arizona Water Conservation Dist.*, No. CV-12-00185-PHX-JAT, 2014 WL 4053404, at *9 (D. Ariz. Aug. 14, 2014) (explaining difference between interference and retaliation claims). In her complaint, Eichenberger alleges that she requested FMLA leave and was punished for so doing. But she does not allege that she actively opposed Falcon Air's violations of the FMLA. For that reason, she has failed to state a claim for retaliation under § 2615(a)(2).

### 6. FLSA Unpaid Wages Claim.

Eichenberger brought a claim for unpaid wages under FLSA. Doc. 1, ¶¶ 106-08. Her requested damages, however, do not depend on a finding that she has stated a claim under FLSA. It is therefore not necessary to address the adequacy this claim.

## C. The Amount of Money at Stake.

Under the fourth *Eitel* factor, the court considers the amount of money at stake in relation to the seriousness of the defendants' conduct. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. "This requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc.*, 725 F. Supp. 2d at 921. Eichenberger is requesting over $300,000 in damages. Doc. 35-1. As discussed below, the Court finds that an award of $162,663.94 is appropriate and that this is proportional to the harm caused by Falcon Air.

## D. Possible Dispute Concerning Material Facts.

Given the sufficiency of the complaint and Defendant's default, "no genuine dispute of material facts would preclude granting [Plaintiff's] motion." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see Geddes*, 559 F.2d at 560.

## E. Whether Default Was Due to Excusable Neglect.

Falcon Air's Default was not due to excusable neglect, as explained in the Court's previous order. Doc. 48.

## F. The Policy Favoring a Decision on the Merits.

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But the mere existence of the Court's default power indicates that this

preference, standing alone, is not dispositive. *See PepsiCo, Inc.*, 238 F. Supp. at 1177 (citation omitted). As previously determined, Defendant's culpable conduct outweighs the policy favoring a decision on the merits. Doc. 48.

**III.   Damages.**

In granting a default judgment, the Court may not simply accept a plaintiff's requested damages. Rather, "[t]here must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citations omitted); *see also Taylor Made Golf Co. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 661 (S.D. Cal. 1997). "While Rule 55(b)(2) permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory." *Cement & Concrete Workers*, 699 F.3d at 234. Eichenberger requests compensatory, liquidated, and punitive damages, as well as attorney's fees and prejudgment interest.

      **1. Lost Wages.**

Plaintiff first requests an award for backpay and lost wages. The FMLA permits the recovery of "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation [of the FMLA]." 29 U.S.C. § 2617(a)(1)(A). Similarly, Title VII allows a plaintiff to recover wages she lost on account of discrimination. 42 U.S.C. § 2000e-5(e)(3)(B). A plaintiff's lost wages are calculated from the date of the discriminatory act to the date of final judgment. *See Thorne v. City of El Segundo*, 802 F.2d 1131, 1136 (9th Cir. 1986).

In an affidavit, Eichenberger states that she earned approximately $2,200 a month while employed with Falcon Air. Doc. 35-2, ¶ 7. In March of 2012, she lost her job at Falcon Air because of the discriminatory acts of Falcon Air employees. Doc. 1, ¶ 45. After this, she worked a number of odd jobs that paid minimal salaries. Doc. 35-2, ¶¶ 12-15. Eichenberger did not find employment comparable to that at Falcon Air until January

of 2015, when she began working for U.S. Airways. Doc. 35-2, ¶ 9.

Falcon Air has produced evidence that Eichenberger received $5,885 in unemployment benefits in 2013. Doc. 41-4. Falcon Air also notes that the payroll records on which Eichenberger relies in calculating her lost wages show that although she earned $2,200 a month, this figure was her gross income. Doc. 41-3. Her net income was $1,846 a month. Doc. 41-3. In her reply, Eichenberger does not dispute these points. The Court will therefore calculate her backpay based on her net income and will account for her unemployment benefits.

The award of backpay is calculated as follows. Eichenberger would have earned $62,764 ($1,846 x 34 months) from March 2012 until the end of December 2014 had she continued to work for Falcon Air.[2] This amount is reduced by $18,932.03, the sums she received in unemployment benefits and earned from other jobs.[3] Thus, Eichenberger is entitled to $43,831.97 in backpay.

Falcon Air argues that an award of backpay is inappropriate because Eichenberger failed to mitigate her losses by not acquiring higher-paying employment until January 2015 and by not earning unemployment benefits in 2012. But the argument regarding Eichenberger's duty to mitigate damages is an affirmative defense, and Falcon Air waived its right to raise affirmative defenses by failing to comply with its discovery obligations and the Court's orders. *See, e.g.*, *Wehrs v. Wells*, 688 F.3d 886, 893 (7th Cir. 2012) ("[T]he duty to mitigate damages is an affirmative defense, and [defendant] waived his right to this defense by not filing a responsive pleading to the complaint."); *Scott v. Ind. State Prison*, No. 3:98-CV-0473-RM, 2000 WL 35761379, at *2 (N.D. Ind. Jan. 19, 2000) ("Failure to mitigate damages is an affirmative defense under Title VII and . . . the

---

[2] Both parties calculate the award of backpay from January 2012. Eichenberger, however, was fired in March 2012. The Court therefore will calculate her backpay from that date. *See Thorne*, 802 F.2d at 1136 ("[T]he court should compute the backpay award from the date of the discriminatory act . . . .").

[3] $6,500 (working at friend's farm) + $1,400 (working as caretaker) + $3,159.53 (working at ADT) + $1,987.50 (working at Home Depot) + $5,885 (2013 unemployment benefits) = $18,932.03. *See* Doc. 35-2, ¶¶ 12-15.

- 9 -

court [will not afford defendants] leave to raise an affirmative defense notwithstanding the default judgment.").

### 2. Liquidated Damages.

An employer who violates the FMLA "is also liable for liquidated damages equal to the amount of actual damages and interest[.]" *Bachelder*, 259 F.3d at 1130 (emphasis in original) (quoting 29 U.S.C. § 2617(a)(1)(A)(iii)). Eichenberger is entitled to liquidated damages of $43,831.97. Falcon Air argues that it had acted in good faith and therefore liquidated damages should be denied. But again, Falcon Air's good faith is an affirmative defense that the Court will not consider.

### 3    Emotional Distress.

The FMLA does not allow recovery for emotional distress. *Farrell v. Tri-Cnty. Metro. Transp. Dist. of Oregon*, 530 F.3d 1023, 1025 (9th Cir. 2008). Title VII does, however, allow recovery for emotional distress caused by intentional sexual harassment. *See* 42 U.S.C. § 1981a. Because of the number of persons employed by Falcon Air, Eichenberger's recovery for emotional distress, future pecuniary losses, and punitive damages can be no more than $100,000. *Id.* § 1981a(b)(3)(B); *see* Doc. 41-2, ¶ 4.

In an affidavit, Eichenberger states that she had been "a normal outgoing bubbly person that had a positive and extremely happy outlook on life." Doc. 35-2, ¶ 18. But after the sexual harassment began, she suffered the following ailments:

- Depression. "[After the harassment,] I became depressed and withdrawn from my normal every day routine and normal daily tasks. I had constant thoughts of not wanting to live anymore. . . . I lost all my motivation to work out, to enjoy food, life, people and most important my family. I had no desire to accomplish anything due to my decreased self-esteem. . . . Every day for almost three years I experienced extreme sadness and incredible pain." Doc. 35-2, ¶¶ 21, 25, 30-31.

- Social withdrawal. "When the sexual harassment began I became withdrawn from my friends, my family and people in general. I was always paranoid of being around any man and especially being alone with a man . . . . I became a hermit to my friends and my family and just wanted the nightmare to end. . . . My attitude towards men in general has changed severely." *Id.*, ¶¶ 20-21.

- Insomnia. "Prior to and since my termination from Falcon I had nightmares and have had trouble sleeping. This has been an everyday occurrence . . . . I started taking three mg of melatonin every night and

finally reached up to ten mg just to try and sleep. My doctor finally gave me a prescription drug to try and help me sleep." *Id.*, ¶¶ 22, 27-28.

- Physical ailments. "Prior to and since my termination I started suffering from really bad headaches that . . . eventually turned into migraines. . . . I [also] began experiencing rashes and hives." *Id.*, ¶¶ 23-24.

- Family problems. "My friends and family could not understand why I withdrew from them . . . Some friends and family members that knew of the situation started acting different towards me as if it was my own fault . . . . One of the hardest things to endure over the last three years was my inability to provide my [adult] daughters without any kind of financial support." *Id.*, ¶¶ 21, 33, 39.

Eichenberger requests an award of $100,000 in compensation for these injuries. The Court, in its discretion, finds an award of $50,000 to be appropriate.

### 4. Punitive Damages.

Under Title VII, a plaintiff may recover punitive damages if she demonstrates that the defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). When a plaintiff suffers malicious discrimination at the hands of a co-employee or supervisor, the employer may also be liable for punitive damages under Title VII. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 542-43 (1999) (quoting Restatement (Second) of Agency § 217C). An employer may be vicariously liable for punitive damages "where a supervisor who did not actually perpetrate the harassment but nonetheless was responsible under company policy for receiving and acting upon complaints of harassment, failed to take action to remedy the harassment." *Swinton v. Potomac Corp.*, 270 F.3d 794, 810 (9th Cir. 2001); *see also E.E.O.C. v. Swissport Fueling, Inc.*, 916 F. Supp. 2d 1005, 1035 (D. Ariz. 2013). A court may award punitive damages in a default judgment. *See, e.g.*, *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *Sandpiper Resorts Dev. Corp. v. Global Realty Investments, LLC*, 904 F. Supp. 2d 971, 986 (D. Ariz. 2012).

Punitive damages are appropriate here. Vanek sexually harassed Eichenberger with a "reckless indifference" to her rights under Title VII. Doc. 1, ¶¶ 24-35. Falcon Air is liable for the punitive damages because two supervisors – Gus Fuerte and Cindy

Nicholson – failed to take action to remedy the harassment even though Eichenberger informed them of it. Although a representative of Falcon Air has stated that the human-resources department never received a complaint of sexual harassment from Eichenberger (Doc. 41-2, ¶ 14), this is not necessarily inconsistent with Eichenberger's claim that she informed her supervisors of the harassment and they failed to take any remedial action. Furthermore, the Court must accept as true the allegations of the complaint. The Court will award $25,000 in punitive damages.

### 5.   Attorney's Fees & Costs.

Under the FMLA, the Court may award reasonable attorney's fees and costs to a prevailing plaintiff. 29 U.S.C. § 2617(a)(3). The Court may also award attorney's fees to a prevailing party under Title VII. 42 U.S.C. § 1988(b). Falcon Air argues that Eichenberger is not a prevailing party because Eichenberger prevailed by default. The Court disagrees. The Supreme Court has explained:

> [T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement.

*Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). The court in *Talley v. District of Columbia*, 433 F. Supp. 2d 5, 7-8 (D.D.C. 2006) labeled a default judgment as "a purely technical victory" that does not make the plaintiff a prevailing party. But the Court in *Farrar* defined a prevailing party as a plaintiff who obtains some relief on the merits of her claim. Even if a default judgment is a "purely technical victory," Eichenberger satisfies the definition of a prevailing party.

Eichenberger requests attorney's fees of $15,150 and costs of $455. After reviewing the affidavit of counsel, the Court finds these amounts reasonable.

### 6.   Prejudgment Interest.

"Title VII authorizes prejudgment interest as part of the backpay remedy in suits against private employers." *Loeffler v. Frank*, 486 U.S. 549, 557 (1988). Similarly,

"[u]nder the FMLA, an employer 'shall be liable' for the pre-judgment interest on the amount of 'any wages, salary, employment benefits, or other compensation denied or lost to [an employee] by reason of the [FMLA] violation.'" *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 301 (4th Cir. 2009) (quoting 29 U.S.C. § 2617(a)(1)(A)(i)-(ii)). An award of liquidated damages under the FMLA must also include prejudgment interest. *Id.* at 303. Eichenberger has not cited authority allowing prejudgment interest on an award of compensatory and punitive damages under Title VII. The Court declines to award interest on these damages. *See Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013) (finding that the award of prejudgment interest is generally "within the court's sound discretion").

The Ninth Circuit has found "the measure of interest rates prescribed for post-judgment interest in 28 U.S.C. § 1961(a) is . . . appropriate for fixing the rate for pre-judgment interest in cases . . . where pre-judgment interest may be awarded[.]" *W. Pac. Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280, 1289 (9th Cir. 1984). The use of this rate is appropriate "with respect to pre-judgment interest in Title VII back pay cases." *Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 837 (9th Cir. 2012). Accordingly, the court awards prejudgment interest at the rate set forth in 28 U.S.C. § 1961 on the $43,831.97 backpay award and $43,831.97 liquidated damages award. Prejudgment interest is to be calculated from March 2012, when Eichenberger lost her job.

**IT IS ORDERED:**

1. Default judgment is entered in favor of Plaintiff Lori Eichenberger and against Defendant Falcon Air for $162,663.94.

2. Prejudgment interest at the rate set forth in 28 U.S.C. § 1961 is awarded on the $43,831.97 backpay award and $43,831.97 liquidated damages award from March 1, 2012.

3. Postjudgment interest is awarded on the total amount of damages in accord with 28 U.S.C. § 1961.

4. Plaintiff's request for attorney's fees and costs is granted in the amount of $15,605 with interest accruing from the date of default judgment in accord with 28 U.S.C. §1961.

5. The Clerk is directed to terminate this action and enter default judgment accordingly.

Dated this 30th day of June, 2015.

_David G. Campbell_
United States District Judge